UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

:

DANNY LEE,                                            :

:

Plaintiff,            :            15 Civ. 1472 (KPF)

:

v.                            :            OPINION AND ORDER

:

CAROLYN COLVIN,                                       :

*Acting Commissioner of Social Security*,            :

:

Defendant. :

:

------------------------------------------------------X

┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____        │
│ DATE FILED: February 6, 2017    │
└─────────────────────────────────┘

KATHERINE POLK FAILLA, District Judge:

For the overwhelming majority of his employment at the Social Security

Administration (the "SSA") — an employment that continues to this day —

Plaintiff Danny Lee has found fault with the conditions of his employment,

correlated these conditions to certain immutable characteristics he possesses,

and sought redress under the federal discrimination laws.  In this action,

Plaintiff alleges that Defendant Carolyn Colvin, the Acting Commissioner of the

SSA, discriminated and retaliated against him on various bases, in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title

VII"), and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C.

§§ 701 to 718.  Defendant has moved to dismiss Plaintiff's Second Amended

Complaint (the "SAC") in its entirety, claiming procedural and pleading

deficiencies.  For the reasons set forth in the remainder of this Opinion,

Defendant's motion is granted in part and denied in part; the Court dismisses all claims other than Plaintiff's retaliation claim under the Rehabilitation Act.

## BACKGROUND[1]

### A. Factual Background

On September 8, 2009, Plaintiff was hired by the SSA to work as a Legal Assistant/Case Intake Technician in its Brooklyn Hearing Office.  (SAC, Ex. 1). Plaintiff was appointed pursuant to the agency's "Schedule A — Selective Placement Program," a two-year appointment program, upon the satisfactory completion of which Plaintiff's position could be "noncompetitively converted to

---

[1]    In resolving the instant motion, the Court has considered Plaintiff's Second Amended Complaint and the 25 exhibits attached thereto ("SAC," Dkt. #39-40)).  *See, e.g., Hart* v. *FCI Lender Servs., Inc.*, 797 F.3d 219, 221 (2d Cir. 2015) ("We draw this narrative from the allegations of [Plaintiff's] first amended complaint, including the documents attached to the amended complaint as exhibits[.]" (internal citations omitted) (citing Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."))).  "Moreover, the rule in this Circuit has been to treat plaintiff's allegations to administrative bodies in discrimination claims as integral parts of the pleadings." *James* v. *Enter. Ass'n of Steamfitters Local 638 of the United Ass'n of Steam, Hot Water, Hydraulic & Gen. Pipe Fitters of N.Y. & Vicinity*, No. 06 Civ. 680 (RJD) (LB), 2007 WL 5065001, at *4 (E.D.N.Y. Oct. 30, 2007), *report and recommendation adopted in part*, No. 06 Civ. 680 (RJD) (LB), 2008 WL 926565 (E.D.N.Y. Mar. 31, 2008) (citing *Gregory* v. *Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (treating plaintiff's affidavit to the Equal Employment Opportunity Commission (the "EEOC") as integral part of pleadings); *see also, e.g., Xie* v. *JPMorgan Chase Short-Term Disability Plan*, No. 15 Civ. 4546 (LGS), 2016 WL 3963113, at *2 (S.D.N.Y. July 20, 2016) (considering "records from Plaintiff's administrative proceedings" in deciding a motion to dismiss under Rule 12(b)(6)).

The Court has taken all well-pleaded allegations as true, as it must at this stage of the litigation.  *See, e.g., Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *1 n.1 (S.D.N.Y. June 26, 2015).  The Court has also reviewed the briefing submitted by the parties and will refer to it as follows:  Defendant's Memorandum of Law in Support of her Motion to Dismiss the SAC (Dkt. #49) will be referred to as "Def. Br.," Plaintiff's Memorandum of Law in Opposition to Defendant's Motion (Dkt. #58) as "Pl. Opp.," and Defendant's Reply (Dkt. #61) as "Def. Reply."  The Court will use "SAC Ex. [exhibit designation]" to refer to the exhibits to the SAC and "Def. Br., Ex. [exhibit designation]" or "Pl. Opp., Ex. [exhibit designation]," as applicable, to refer to the exhibits to the parties' briefing.  The Addendum attached to the SAC will be referred to as "SAC Add."

a permanent appointment." (*Id.*).[2]  Plaintiff contends that almost immediately after he was hired, the SSA began to discriminate against him.  (SAC Add.).

In his voluminous pleadings, Plaintiff alleges discrimination based on race, sex, national origin, color, religion, and disability.  (SAC).  Plaintiff alleges himself to be an Asian-American man and a United States citizen; he offers no insight into his religious practices.  (*Id.*).  Plaintiff further claims to suffer from femoral head avascular necrosis, which limits his range of motion and causes him moderate hip pain.  (*Id.* at Ex. 4).[3]  It is on the basis of this condition that Plaintiff claims, and has been found, to be an individual with a disability.  (*Id.* at Ex. 1).

Plaintiff's condition and its corresponding limitations are well-documented in a series of doctor's notes attached as exhibits to the SAC:  In the earliest-dated note, from June 11, 2010, a physician indicated that Plaintiff could "only stand for a limited amount of time," and advised that Plaintiff's work schedule "should not include any manual labor[,] particularly any heavy lifting."  (SAC, Ex. 2).  The same physician indicated on August 3, 2010, that Plaintiff "should not be allowed to [lift], deliver any heavy boxes, nor ...

---

[2]     A selective placement program strives to match qualified individuals with disabilities with employment opportunities consistent with their level of skills and abilities.  *See generally Careers at SSA: Individuals with Disabilities*, https://www.ssa.gov/careers/individualsWithDisabilities.html (last visited February 3, 2017).

[3]     Avascular necrosis, or osteonecrosis, is caused by the temporary or permanent loss of blood supply to a bone that causes the bone tissue to die.  *Questions and Answers about Osteonecrosis (Avascular Necrosis)*, National Institute of Arthritis and Musculoskeletal and Skin Diseases, https://www.niams.nih.gov/Health_Info/Osteonecrosis/ (last visited February 3, 2017).

continuously get up and down from his chair," because such "movement
[would] aggravate his symptom[s]." (*Id.*).  A different physician, on
December 16, 2011, advised Plaintiff "to avoid heavy weight lifting (<5lb) or
prolonged standing (<1 hour continuously; <2 hours totally in a day period [of]
time) or frequently carrying heavy object[s]" of greater than five pounds "at any
time," and to begin biweekly physical therapy.  (*Id.* at Ex. 4).  And a third
physician noted on December 20, 2011, that he had advised Plaintiff "to not do
heavy lifting or pulling," and believed Plaintiff "should be assigned to a more
sedentary job."  (*Id.*).

Also well-documented is the timeline of conduct giving rise to Plaintiff's
SAC.  Indeed, Plaintiff's diary of workplace grievances — beginning less than
three weeks after his hiring — is remarkable for both the number and the
granularity of its entries.  (*See generally* SAC).  The Court will consider specific
incidents in more depth below, to the extent they are relevant to each of
Plaintiff's claims.  In general, Plaintiff alleges that he was discriminated against
on various occasions between 2009 and 2016 insofar as: (i) he was subjected to
a two-year probationary period for eligibility for advanced medical leave while
non-disabled employees were given probationary periods of only one year;
(ii) he was constructively discharged from his position; (iii) he was given false
reviews and a groundless suspension and thus unable to secure a promotion;
(iv) his disability was not reasonably accommodated; (v) he was subjected to
unequal terms and conditions because his time records were falsified, he was
given false reviews, his emailing was restricted, his workload was four times

greater than his peers', he was forced to work as a receptionist, and he was given "all the paper cases"; and (vi) he was given instruction contrary to his job description.  (*See* SAC; *see generally id.* at Ex. 1-25; Pl. Opp.).

## B.   Procedural History

### 1.   The Administrative Process

Plaintiff filed his first Equal Employment Opportunity ("EEO") complaint internally with the SSA in the fall of 2010, "relating to a reasonable accommodation request he had filed earlier in the year."  (SAC, Ex. 15; *see also id.* at Ex. 1).  However, Plaintiff withdrew that complaint after discussion with EEO Counselor Marilyn Goldman.  (SAC, Ex. 15; *see also id* at Ex. 1, 3).  In an email sent on October 7, 2010, Ms. Goldman directed Plaintiff to "withdraw [his] EEO complaint if [his] request for reasonable accommodation ha[d] been granted."  (SAC, Ex. 3).  Plaintiff accordingly withdrew his complaint because he had received the printer that he sought.  (*Id.*).

Plaintiff sought further EEO counseling on April 29, 2011.  (SAC, Ex. 1). When the EEO counselor was unable to resolve Plaintiff's concerns, the counselor provided Plaintiff with a Notice of Right to File a Formal Complaint of Discrimination internally with the SSA.  (*Id.*).  Plaintiff filed a formal complaint on June 3, 2011, and it was accepted by the SSA on July 16, 2011, as Case No. NY-11-0559-SSA (the "2011 Case").  (*Id.*).

The SSA conducted a formal investigation into Plaintiff's allegations through September 26, 2011, and sent Plaintiff its Report of Investigation on October 28, 2011.  (SAC, Ex. 1).  Plaintiff requested a hearing before an EEOC

Administrative Judge ("AJ") (*id.*), and a hearing was held on May 5, 2014 (Def. Br., Ex. A).  There, Plaintiff was asked whether he was pursuing or withdrawing his claims of discrimination on the bases of race and sex.  (Def. Br., Ex. A). Plaintiff indicated that he intended to withdraw these claims.  (*Id.*).  Plaintiff was then given an opportunity to speak with his counsel off the record about this decision.  (*Id.*).  Following that discussion, Plaintiff confirmed his intention to drop these claims.  (*Id.*; *see also* Pl. Opp. 2 ("Plaintiff does admit to the withdrawal of some claims due to [his] attorney ... telling him to do so[.]")).

The AJ therefore focused his analysis on those claims that had not been withdrawn, regarding disability and retaliation, and issued an Order Entering Judgment and Decision in favor of the SSA regarding these claims on December 11, 2014.  (SAC, Ex. 1).  Finding the AJ's decision "factually and legally correct," the SSA fully implemented it by means of a Final Order issued on January 21, 2015.  (*Id.*).  More specifically, the SSA found that it had not

> subjected [Plaintiff] to disparate treatment on the bases of physical disability (hip/avascular necrosis) or retaliation when: [i] [o]n April 28, 2011, [Plaintiff] was issued a poor progress review rating; [ii] [on] June 30, 2011, [Plaintiff's] request for a disabled parking space was ignored; [iii] [o]n December 8, 2011, [Responsible Management Official ("RMO") Lonnie] Phillips assigned three mail crates of paper cases and directed [Plaintiff] to physically move and process the cases notwithstanding his physical disability; [iv] [o]n December 14, 2011, management directed [Plaintiff] to physically move and process paper cases notwithstanding his advisement that he was in 'extreme pain'; [v] [o]n October 7, November 10, and December 21, 2011, [Plaintiff] alerted RMO Phillips that there were boxes blocking the file cabinets but no action was taken; and [vi] [o]n December 21, 2011, RMO Phillips

removed and lost certain identified paper cases and
then held [Plaintiff] responsible.

(*Id.*).

While the 2011 Case was pending, Plaintiff sought further EEO
counseling on April 17, 2014.  (SAC, Ex. 1).  An EEO counselor again tried and
failed to resolve Plaintiff's allegations, and Plaintiff was again given leave to,
and filed, a Formal Complaint of Discrimination on June 2, 2014.  (*Id.*).  The
SSA accepted the complaint, Case No. NY-14-0424-SSA (the "2014 Case"), and
conducted a formal investigation through October 20, 2014.  (*Id.*).  Plaintiff was
sent a Report of Investigation on January 28, 2015, to which he did not
respond.  (*Id.*).  Accordingly, on June 11, 2015, the SSA issued a Final Agency
Decision finding that it had not discriminated against Plaintiff, and that it had
not

> subjected [Plaintiff] to non-sexual harassment (hostile
> work environment) based on reprisal for prior EEO
> activity and disability (physical) when: [i] on April 8-10,
> 2014[,] management denied his request for leave and he
> was charged with Absence without Leave (AWOL)
> (subsequently reversed on April 24, 2014); [ii] on April
> 29, 2014 he discovered that his mid-year performance
> review contained untrue comments that referenced a
> prior incident; [iii] since February 3, 2012, his request
> for disabled parking was denied; [iv] on February 3,
> 2012, his prior approval for an electronic workload was
> rescinded; [v] he was not fully reimbursed for time and
> leave via the Emergency Leave Transfer Program due to
> Hurricane Sandy; and [vi] from December 8, 2011, to
> the present, he has been instructed to lift and carry
> heavy boxes despite the fact that he was physically
> unable to do so, causing him to seek medical treatment
> for pain.

(*Id.*).[4]

## 2.    The Instant Litigation

The January 21, 2015 Final Order advised Plaintiff of his right to file a discrimination lawsuit in federal court.  (SAC, Ex. 1).[5]  Plaintiff initiated this action on February 25, 2015.  (Dkt. #1).  He was given several opportunities to amend his pleadings, and took advantage of each opportunity.  (*See* Dkt. #14, 34).  The operative complaint is Plaintiff's SAC, which was filed on February 29, 2016.  (Dkt. #39-40).  Defendant filed a motion to dismiss the SAC on May 18, 2016 (Dkt. #48-49), which motion Plaintiff opposed on July 19, 2016 (Dkt. #58-59).  Defendant filed her reply on August 2, 2016.  (Dkt. #61).

While Defendant's motion was pending, Plaintiff filed with the Court various letters that he had received from the SSA.  (*See, e.g.*, Dkt. #64; Dkt. #72, Ex. 1).  The Court construed these filings as Plaintiff's request for leave to amend the SAC, which request the Court denied without prejudice on November 9, 2016, pending the Court's resolution of the instant motion.  (Dkt. #77).

---

[4]    The Court understands that Plaintiff has other cases pending before the EEOC.  On July 22, 2016, the EEOC sent Plaintiff a letter indicating that it was consolidating two of his complaints of discrimination, *viz.*, Case No. NY-16-0387-SSA, which was filed on April 28, 2016, and Case No. NY-16-0527-SSA, which was filed on June 6, 2016 (together with Case No. NY-16-0387-SSA, the "2016 Case").  (Dkt. #64; *see also* Dkt. #72, Ex. 1).

[5]    The June 11, 2015 Final Agency Decision contained a similar advisement.  (SAC, Ex. 1).

## DISCUSSION

**A.    Applicable Law**

**1.    Motions to Dismiss Under Federal Rule of Civil
Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court should "draw all reasonable inferences in [the

plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief." *Faber* v.

*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

and citation omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88

(2d Cir. 2009)).  Thus, "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  In this regard, a

complaint is deemed to include any written instrument attached to it as an

exhibit or any statements or documents incorporated in it by reference.  *See,*

*e.g.*, *Hart* v. *FCI Lender Servs., Inc.*, 797 F.3d 219, 221 (2d Cir. 2015) (citing

Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion.  A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for

all purposes.")).

"While *Twombly* does not require heightened fact pleading of specifics, it

does require enough facts to '[nudge a plaintiff's] claims across the line from

conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d

9

Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

To survive a motion to dismiss, "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination."  *Twombly*, 550 U.S. at 569 (internal alteration and quotation marks omitted) (quoting *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 508 (2002)).  Rather, at the pleading stage, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'"  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)).

### 2.   Motions to Dismiss Involving *Pro Se* Plaintiffs

When ruling on a motion to dismiss a *pro se* plaintiff's complaint, district courts are instructed to "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests."  *Weixel* v. *Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (internal quotation marks and alterations omitted) (quoting *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *see also Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Nonetheless,

even a *pro se* plaintiff's factual allegations must be at least "enough to raise a
right to relief above the speculative level" to survive a motion to dismiss.
*Twombly*, 550 U.S. at 555.  Moreover,

> while this special leniency may somewhat loosen the
> procedural rules governing the form of pleadings (as the
> Second Circuit very recently observed), it does not
> completely relieve a *pro se* plaintiff of the duty to satisfy
> the pleading standards set forth in Rules 8, 10 and 12.
> Rather, as both the Supreme Court and Second Circuit
> have repeatedly recognized, the requirements set forth
> in Rules 8, 10 and 12 are procedural rules that even *pro
> se* civil rights plaintiffs must follow.   Stated more
> plainly, when a plaintiff is proceeding *pro se*, "all normal
> rules of pleading are not absolutely suspended."

*Dallio* v. *Hebert*, 678 F. Supp. 2d 35, 55-56 (N.D.N.Y. 2009) (internal citations
and footnotes omitted) (quoting *Stinson* v. *Sheriff's Dep't of Sullivan Cty.*, 499 F.
Supp. 259, 262 (S.D.N.Y. 1980)).

The Court has done its best to discern Plaintiff's claims of discrimination,
as well as his arguments opposing dismissal, but these tasks have been
complicated by Plaintiff's inclusion of some 700 pages of exhibits, many of
which exist in tension with, if not in contradiction of, Plaintiff's arguments.
The Court commends to Plaintiff the observation of the Seventh Circuit that
"[j]udges are not like pigs, hunting for truffles buried in briefs."  *United States*
v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

## B.    Plaintiff Has Not Stated a Claim Under Title VII

Title VII prohibits an employer from "discriminat[ing] against any
individual with respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's race, color, religion, sex, or national

origin."  42 U.S.C. § 2000e-2(a)(1).  "It does not, however, bar disability

discrimination."  *Moore* v. *City of N.Y.*, No. 15 Civ. 4578 (KPF), 2016 WL

3963120, at *6 (S.D.N.Y. July 21, 2016).  Plaintiff claims that he suffered

discrimination, in violation of this statute, on the basis of his race, color,

religion, sex, and national origin.  He also claims that he was retaliated against

for taking action to vindicate his rights under Title VII, including by being

subjected to a hostile work environment.  For the reasons discussed in the

remainder of this section, none of these claims succeeds.

### 1.     Exhaustion Requirements for Title VII Claims Against Federal Agencies

Before they may be evaluated on their merits, claims brought pursuant

to Title VII must satisfy various procedural requirements:  Focusing first on

issues of timeliness, the Second Circuit has made clear that "Title VII plaintiffs

must exhaust available administrative remedies in a timely fashion."  *Pauling* v.

*Sec'y of Dep't of Interior*, 160 F.3d 133, 133 (2d Cir. 1998) (internal quotation

marks omitted) (quoting *Briones* v. *Runyon*, 101 F.3d 287, 289 (2d Cir. 1996)).

Aggrieved federal employees, such as Plaintiff here, "must initiate contact with

a [EEO] Counselor within 45 days of the date of the matter alleged to be

discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action."  29 C.F.R. § 1614.105(a)(1); *see Green* v. *Brennan*,

578 U.S. —, 136 S. Ct. 1769, 1775 (2016).  Additionally, a "plaintiff asserting a

claim under Title VII ... must file [his] complaint within 90 days of receiving the

right-to-sue letter."  *Moore*, 2016 WL 3963120, at *6 (citing *Wynder* v.

*McMahon*, 360 F.3d 73, 76 (2d Cir. 2004)); *see* 42 U.S.C. § 2000e-16(c) (setting forth deadlines for federal employees).[6]

"A plaintiff's failure to file a claim within the time limits set by Title VII or the ADA will ordinarily preclude [him] from pursuing that claim in federal court, and can warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Moore*, 2016 WL 3963120, at *6. That said, Title VII's timeliness requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that ... is subject to waiver, estoppel, and equitable tolling." *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *accord, e.g.*, *Fowlkes* v. *Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015); *Boos* v. *Runyon*, 201 F.3d 178, 182 (2d Cir. 2000) ("[T]he exhaustion requirement, while weighty, is not jurisdictional."). "[C]ompliance with the filing period is subjected to waiver and tolling as required by equity in order to 'honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer.'" *Spector* v. *Bd. of Trs. of*

---

[6]      *See generally Belgrave* v. *Pena*, 254 F.3d 384, 386 (2d Cir. 2001):

> Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") establish the applicable administrative procedures that a federal employee must exhaust prior to filing suit. The EEOC regulations require that the aggrieved employee, *inter alia*, (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, *see* 29 C.F.R. § 1614.105(a)(1), and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"), *see id.* § 1614.106(a), (b). The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(a), (b).

*Cmty.-Tech. Colls.*, 463 F. Supp. 2d 234, 245 (D. Conn. 2006) (quoting *Zipes*, 455 U.S. at 398).

Where failure to exhaust has been established, it is the plaintiff's burden to demonstrate "the appropriateness of equitable tolling." *Boos*, 201 F.3d at 185. This burden is a heavy one, requiring the plaintiff to demonstrate both that "[i] that he has been pursuing his rights diligently, and [ii] that some extraordinary circumstance stood in his way." *Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005). What is more, the Supreme Court has recently "reaffirm[ed]" that "the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wisc.* v. *United States*, 577 U.S. —, 136 S. Ct. 750, 756 (emphasis in original); *see also Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 113 (2002) (noting that equitable tolling should be "applied sparingly").

A plaintiff's EEOC complaint (analogous to Plaintiff's formal complaints here) is significant not merely for issues of timeliness, but for issues of notice. That is, a district court's purview is limited to "claims that are either included in the EEOC charge or are based on conduct which is reasonably related to conduct alleged in the EEOC charge." *Fiscina* v. *N.Y.C. Dist. Council of Carpenters*, 401 F. Supp. 2d 345, 356 (S.D.N.Y. 2005) (ellipsis omitted) (quoting *Dahbany-Miraglia* v. *Queensboro Cmty. Coll.*, No. 03 Civ. 8052 (SAS), 2004 WL 1192078, at *5 (S.D.N.Y. May 27, 2004)); *see also Littlejohn*, 795 F.3d at 322. A claim may be "considered reasonably related if the conduct

14

complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Williams* v. *N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (quoting *Fitzgerald* v. *Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)). "To determine whether a claim is 'reasonably related' to a claim included in an EEOC charge, courts should focus 'on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving,' and ask the 'central question' of 'whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases.'" *Petty* v. *City of N.Y.*, No. 10 Civ. 8581 (KPF), 2014 WL 6674446, at *10 (S.D.N.Y. Nov. 25, 2014) (quoting *Williams*, 458 F.3d at 70), *aff'd,* 633 F. App'x 52 (2d Cir. 2016) (summary order).

### 2. Plaintiff's Claims of Discrimination on the Basis of Race, Sex, Color, National Origin, and Religion Were Not Exhausted

Plaintiff's SAC includes (and, indeed, is necessarily limited to) the violations considered by the SSA in their evaluation of Plaintiff's 2011 and 2014 Cases. Significantly, however, the Title VII violations that Plaintiff alleges have not been exhausted in either case. The 2011 Case concerned incidents that were alleged to have occurred between April and December 2011; the claims that Plaintiff ultimately pursued, however, did not relate to his race, religion, sex, color, or national origin. (*See* SAC; *id.* at Ex. 1). In point of fact, Plaintiff expressly withdrew claims alleging discrimination on the basis of race or sex, in order to focus on his retaliation and disability discrimination claims. (Def. Br. 5-6 (citing Def. Br., Ex. A)). And as Defendant notes, Plaintiff did not

15

even commence the EEO process with respect to any claim of discrimination based on color, national origin, or religion.  (Def. Br. 6 n.2).

A plaintiff who withdraws an EEO claim before a final decision is made with regard to it has not exhausted his administrative remedies as to that claim.  *See Stephens-Buie* v. *Shinseki*, No. 09 Civ. 2397 (LBS), 2011 WL 2574396, at *8 (S.D.N.Y. June 27, 2011); *see also Rivera* v. *U.S. Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir. 1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's remedies.").  Thus, Plaintiff's claims of race, religion, sex, color, or national origin discrimination purporting to stem from the 2011 Case are not exhausted and must be dismissed.

Plaintiff's 2014 Case alleged that, between December 2011 and April 2014, the SSA "subjected him to non-sexual harassment (hostile work environment) based on reprisal for prior EEO activity and disability (physical)." (SAC, Ex. 1).  Again, this claim relates in no way to Plaintiff's race, sex, color, or national origin.  Nor was the "EEO activity" inciting the alleged "reprisal" predicated on harassment on the basis of Plaintiff's race, religion, sex, color, or national origin.  And the other proffered basis for the alleged "non-sexual harassment" is Plaintiff's "disability (physical)," which, as noted above, is not covered by Title VII.  Asking itself "the central question" whether Plaintiff's complaint gave the SSA or the EEOC adequate notice to investigate discrimination on the basis of a Title VII-protected characteristic, the Court must conclude that it did not.  Accordingly, Plaintiff's Title VII discrimination claims stemming from the 2014 Case are also unexhausted.

### 3.   Plaintiff Has Demonstrated No Basis for Equitable Tolling

Plaintiff's argument for equitable tolling is, at base, an effort to undo two of his prior waivers: (i) his withdrawal of the 2010 EEO claim at the advice of EEO Counselor Marilyn Goldman (SAC, Ex. 3; *id.* at Ex. 15); and (ii) his withdrawal of claims of discrimination on the basis of race and sex on the advice of his counsel during his hearing in the 2011 Case (Def. Br., Ex. A; Pl. Opp. 2).  With regard to Plaintiff's first argument, the Court finds that even if equitable tolling were warranted (as, for example, if Ms. Goldman were to have provided incorrect advice), the withdrawn claims to which such tolling would apply would relate solely to Defendant's failure to reasonably accommodate Plaintiff's disability.  Tolling would not reinstate Plaintiff's proffered Title VII claims.

With regard to Plaintiff's second argument, the Court does not find Plaintiff's reliance on his counsel's advice to be sufficient cause to warrant equitable tolling.  By stipulating in his hearing to proceeding on more limited issues than he originally claimed, "Plaintiff waived all other issues before the EEOC, and thereby failed to administratively exhaust [his] claims."  *Stephens-Buie*, 2011 WL 2574396, at *8; *see also id.* at 8 n.7 (holding that because a plaintiff "was represented by counsel at [her] hearing[,] ... she is bound by her decision to withdraw her [timely filed] claim at that hearing"); *cf. Link* v. *Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Smith* v. *Ayer*, 101 U.S.

320, 326 (1879))).  Further, having failed to contest the waiver at any point

prior to this litigation, Plaintiff has demonstrated neither reasonable diligence

nor a circumstance that was "extraordinary and beyond [his] control."

*Menominee Indian Tribe*, 136 S. Ct. at 756.  Thus, Plaintiff's Title VII

discrimination claims will not be considered on the merits.

### 4.   Plaintiff's Title VII Retaliation Claim Was Not Exhausted and Fails to State a Claim

Plaintiff has not specified whether he brings his retaliation claim under

Title VII or the Rehabilitation Act.  This imprecision matters little, however,

because either claim, if timely, would be considered according to the same

framework.  *See Treglia* v. *Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)

("Claims for retaliation [brought under the ADA or Rehabilitation Act] are

analyzed under the same burden-shifting framework established for Title VII

cases.").  The Court will consider his claim under both statutes.

"To establish a Title VII retaliation claim, plaintiff must allege:

'[i] participation in a protected activity; [ii] that the defendant knew of the

protected activity; [iii] an adverse employment action; and [iv] a causal

connection between the protected activity and the adverse employment action.'"

*Pietri* v. *N.Y.S. Office of Ct. Admin.*, 936 F. Supp. 2d 120, 140 (E.D.N.Y. 2013)

(quoting *Bucalo* v. *Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d

Cir. 2012)).  "In order to show that he engaged in 'protected activity,' a plaintiff

'need not establish that the conduct he opposed was in fact a violation of Title

VII …; [h]owever, the plaintiff must demonstrate a good faith, reasonable belief

that the underlying challenged actions of the employer violated the law.'"

*Santucci* v. *Veneman*, No. 01 Civ. 6644 (CBM), 2002 WL 31255115, at *4 (S.D.N.Y. Oct. 8, 2002) (quoting *Manoharan* v. *Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  "And not just any law — the plaintiff is 'required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'"  *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (alteration omitted) (quoting *McMenemy* v. *City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)).

　　As an initial matter, inasmuch as the Court has determined that Plaintiff's Title VII discrimination claims are unexhausted, it determines that any claim of retaliation under Title VII is similarly unexhausted.  Plaintiff has additionally failed to state a retaliation claim under Title VII.  Specifically, "[P]laintiff utterly fails to allege such a good faith, reasonable belief that defendant's alleged retaliatory tactics were undertaken *in response to Title VII-protected activity*."  *Santucci*, 2002 WL 31255115, at *4 (emphasis in original).  As outlined in his EEOC complaints, "Plaintiff's retaliation claims do not involve 'some sort of complaint about a type of discrimination that Title VII forbids.'"  *Id.* (quoting *Brands-Kousaros* v. *Banco Di Napoli S.P.A.*, 97 Civ. 1673 (DLC), 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997)).

　　While both the 2011 and 2014 cases involved claims of "retaliation" and "reprisal," the exhibits to the SAC make clear that these claims did not involve allegations of retaliation or reprisal for Plaintiff's attempts to secure process for any violation of his rights on the basis of his race, religion, sex, national origin,

or color.  "All of Plaintiff's viable allegations of retaliatory conduct concern [his] disability and [his] attempts to seek [accommodations] from [his employer] concerning [his] work conditions with regard to [his] physical injury." *Stephens-Buie*, 2011 WL 2574396, at *10.  In short, Plaintiff has not alleged a viable retaliation claim under Title VII.  Accordingly, the Court will only consider Plaintiff's retaliation claim under the Rehabilitation Act, and will do so in greater depth below.

### 5.    Plaintiff Has Failed to State a Claim for Hostile Work Environment Under Title VII

Plaintiff's hostile work environment claim under Title VII fails for similar reasons.  "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: [i] 'is objectively severe or pervasive — that is, ... creates an environment that a reasonable person would find hostile or abusive'; [and] [ii] creates an environment 'that the plaintiff subjectively perceives as hostile or abusive.'" *Patane* v. *Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (quoting *Gregory* v. *Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).  A plaintiff must also plead that the hostile work environment was created because of a characteristic protected by Title VII.  *Gregory*, 243 F.3d at 692; *see also Moore* v. *City of N.Y.*, No. 15 Civ. 6600 (GBD) (JLC), 2017 WL 35450, at *22 (S.D.N.Y. Jan. 3, 2017) ("Even when a plaintiff establishes that [he] was exposed to an objectively and subjectively hostile work environment, [he] will not have a claim unless [he] can also demonstrate that the hostile work environment was caused by animus towards [him] *as a result of [his] membership in a protected*

20

*class*." (emphasis added) (internal quotation marks omitted) (quoting *Bermudez* v. *City of N.Y.*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011))).  Plaintiff's Title VII hostile work environment claim here proceeds from the 2014 Case, and, like his retaliation claim, is premised solely on allegations of "reprisal for prior EEO activity and disability (physical)."  (SAC, Ex. 1).  As discussed above, any such reprisal could not have been in response to "EEO activity" regarding any Title VII violation.  And disability is not a characteristic protected by Title VII. Finally, the incidents the Court may consider in this regard are neither severe nor pervasive.  Thus, Plaintiff has failed to allege that he was subjected to a hostile work environment in violation of Title VII.

**C.     Among Plaintiff's Rehabilitation Act Claims, Only His Retaliation Claim Is Adequately Pleaded**

      **1.     Plaintiff Fails to State a Claim for Failure to Make Reasonable Accommodations**

            **a.     Applicable Law**

                  **i.     The Rehabilitation Act and Federal Employees**

"In the Second Circuit, Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability[.]"  *Nadel* v. *Shinseki*, 57 F. Supp. 3d 288, 295 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Carby* v. *Holder*, No. 11 Civ. 5775 (DLC), 2013 WL 3481722, at *8 n.9 (S.D.N.Y. July 10, 2013)); *see also Rivera* v. *Heyman*, 157 F.3d 101, 104 (2d Cir. 1998) (affirming that "[S]ection 501 provides the sole remedy" in cases involving disability claims brought by federal employees).  This section prohibits "nonaffirmative

action employment discrimination" in the federal workplace, 29 U.S.C. § 791, and "imposes on federal agencies a duty to take affirmative steps to ensure that handicapped individuals have equal access to employment opportunities in the federal government," *DiPompo* v. *W. Point Military Acad.*, 770 F. Supp. 887, 888 (S.D.N.Y. 1991) (internal quotation mark omitted) (quoting *Treadwell* v. *Alexander*, 707 F.2d 473, 475 (11th Cir. 1983)) (citing *Southeastern Cmty. Coll.* v. *Davis*, 442 U.S. 397, 410 (1979)), *aff'd*, 960 F.2d 326 (2d Cir. 1992).[7]

In enforcing the Rehabilitation Act, courts are guided by the Americans with Disabilities Act (the "ADA").  Both the Rehabilitation Act and its implementing regulations indicate that the standards for determining whether either has been violated are the standards applied under Titles I and V of the ADA, as amended, insofar as such sections relate to employment, and as elaborated by the ADA's implementing regulations.  *See* 29 U.S.C. § 791(f); 29 C.F.R. § 1614.203(b).  The ADA's implementing regulations, in turn, identify a variety of conduct that could amount to a violation.[8]

---

[7]     A plaintiff seeking to bring a claim under the Rehabilitation Act must exhaust that claim in accordance with EEOC regulations.  *See Boos* v. *Runyon*, 201 F.3d 178, 181 (2d Cir. 2000).  Defendant does not raise an exhaustion challenge in this regard, however.

[8]     Specifically, these regulations mandate that a federal employer may not "discriminate on the basis of disability against a qualified individual" with regard to

> (i) [r]ecruitment, advertising, and job application procedures; (ii) [h]iring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring; (iii) [r]ates of pay or any other form of compensation and changes in compensation; (iv) [j]ob assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists; (v) [l]eaves of absence, sick leave, or any other leave; (vi) [f]ringe benefits available by virtue of employment, whether or not administered by the covered entity; (vii) [s]election and financial support for training, including: apprenticeships, professional meetings, conferences and other

### b.   Reasonable Accommodations for Federal Employees

Federal employers are required to provide reasonable accommodations to employees with disabilities.  *See* 29 C.F.R. § 1630.9(a); *see also, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003) ("Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation.").  The ADA specifies that a "reasonable accommodation" may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities," and "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).[9]

---

    related activities, and selection for leaves of absence to pursue training; (viii) [a]ctivities sponsored by a covered entity, including social and recreational programs; and (ix) [a]ny other term, condition, or privilege of employment."

29 C.F.R. § 1630.4.  Federal agencies further may not "use standards, criteria, or methods of administration, which are not job-related and consistent with business necessity, and ... [t]hat have the effect of discriminating on the basis of disability," *id.* § 1630.7, or "limit, segregate, or classify [an] ... employee in a way that adversely affects his or her employment opportunities or status."  *Id.* § 1630.5.

[9]    The ADA's implementing regulations define a "reasonable accommodation" to include

    [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or ... [m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o)(1).

23

The ADA's implementing regulations outline the process by which the appropriate recommendation is to be determined.  The regulations explain that "it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation," in order "to determine the appropriate reasonable accommodation," which process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).  Courts have found that the responsibility for engaging in this interactive process is shared between employers and employees, and have excused an employer's liability for not providing a reasonable accommodation where the process was abandoned by the employee with a disability.  *See, e.g.*, *Elmessaoudi* v. *Mark 2 Rest. LLC*, No. 14 Civ. 4560 (PGG), 2016 WL 4992582, at *7 (S.D.N.Y. Sept. 15, 2016) (collecting cases); *cf. Sheng* v. *M&TBank Corp.*, — F.3d —, No. 14-4467-cv, 2017 WL 443641, at *5-6 (2d Cir. Feb. 2, 2017) (concluding that an employer's failure to engage in the interactive process cannot support a standalone ADA claim, but may be evidence of discrimination under the ADA).

A federal employer must provide appropriate reasonable accommodations absent undue hardship.  29 C.F.R. § 1630.9(a) ("It is unlawful for [an employer] not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified ... employee with a disability, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business.").  "Undue hardship" is defined to

mean "significant difficulty or expense," when considered in light of a variety of factors. *Id.* § 1630.2(p). Generally, an accommodation is not reasonable "if its costs are ... clearly disproportionate to the benefits that it will produce." *Borkowski* v. *Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). And "[r]elatedly, it is well-established that the employer is not required to provide every accommodation the disabled employee may request, so long as the accommodation offered is a reasonable one." *Miller* v. *McHugh*, No. 14 Civ. 5026 (CS), 2016 WL 698147, at *4 (S.D.N.Y. Feb. 19, 2016) (citing *Fink* v. *N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)).

Where a federal employee alleges a violation of Section 501, he "initially has the burden of coming forward with evidence to make at least a facial showing that his handicap can be accommodated." *DiPompo*, 770 F. Supp. at 889. "A plaintiff makes out a *prima facie* case of disability discrimination arising from a failure to accommodate by establishing that: [i] he is a person with a disability under the meaning of the ADA, [ii] his employer had notice of his disability, [iii] he could perform the essential functions of his job with reasonable accommodation, and [iv] his employer refused to make the reasonable accommodation." *Miller*, 2016 WL 698147, at *4 (citing *Stone* v. *City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997)).

### b.   Discussion

The Court accepts for purposes of this analysis, as the SSA did below, that Plaintiff is a person with a disability under the ADA. (SAC, Ex. 1). The Court further finds that the SSA had notice of Plaintiff's disability no later than

June 11, 2010, when Plaintiff first provided the agency with a physician's note documenting his condition.  (*Id.*).  And Plaintiff's pleading is replete with emails discussing his disability and requested accommodations.  (*See generally* SAC).

Where Plaintiff falters is in failing to plead that the SSA failed to provide reasonable accommodations to him.  Plaintiff has claimed since September 25, 2010, that he could have performed all of the essential functions of his job with reasonable accommodation, specifying that he could so perform if given a desktop printer and electronic caseload.  (SAC Add.; SAC, Ex. 1, 2).  He later sought a scanner and a parking space.  (SAC, Ex. 1).

The exhibits to the parties' pleadings confirm that the limitations advanced by Plaintiff and supported by his treating medical professionals were addressed by reasonable accommodations.  Plaintiff has alleged that his physicians recommended sedentary work with minimal movement, no heavy lifting, and no prolonged standing.  (*See* SAC, Ex. 2, 4).  His pleading shows that a five-pound weight restriction was imposed on the cases that Plaintiff was permitted to carry, and that Plaintiff was directed to seek the assistance of others when faced with the prospect of carrying paper cases over the weight limit.  (*Id.* at Ex. 4).  Indeed Plaintiff was given that assistance on multiple occasions when sought.  (*See, e.g.*, *id.* at Ex. 3, 4, 15).  And though Plaintiff has not alleged any reason why printing was required for his performance of any essential work function, Plaintiff was provided with a printer, at his desk and

26

at the receptionist desk.  (*Id.* at Ex. 15, 20).[10]  These were reasonable accommodations that permitted Plaintiff to perform the "essential function" of working with paper cases.  (*Id.* at Ex. 4, 15 (identifying this work with paper cases as an "essential function")).

Other accommodations were explored with Plaintiff in the requisite interactive process; Plaintiff's requests for a parking spot and a fully electronic case load, for example, were not provided because Plaintiff refused to provide medical evidence of their necessity for his performance of any essential function.  (*See, e.g.*, SAC, Ex. 3, 4, 7, 17).  The SSA is not liable where Plaintiff abandons the interactive process and fails to demonstrate the necessity of his requested accommodations.  *See Noel* v. *BNY-Mellon Corp.*, 514 F. App'x 9, 10 (2d Cir. 2013) (summary order) ("As the district court found, [plaintiff] abandoned this interactive process and cannot, therefore, recover on her claim for a failure to accommodate.").  And while the SSA did not provide Plaintiff with a parking spot, it did assist him with securing an alternative transportation service for commuters with disabilities.  (SAC, Ex.1, 7).  Therefore, Plaintiff has failed to state a claim that the SSA failed reasonably to accommodate his disability in violation of the Rehabilitation Act.

---

[10]    The Court will accept Plaintiff's allegation that he was frequently without toner for this printer, but will not make the logical leap to conclude that these episodes amounted to the SSA's failure to make a reasonable accommodation, particularly given Plaintiff's admission that the lack of toner was due to a lack of funding, and was an issue office-wide.  (SAC Add.; SAC, Ex. 3, 8).

### 3.   Plaintiff States a Claim for Retaliation

####   a.   Applicable Law

"To make out a prima facie case of unlawful retaliation, a plaintiff must prove that: [i] he participated in a legally protected activity; [ii] his employer knew of the protected activity; [iii] an adverse employment action ensued; and [iv] a causal connection existed between the protected activity and the adverse employment action." *Bowles* v. *N.Y.C. Transit Auth.*, 285 F. App'x 812, 814 (2d Cir. 2008) (summary order); *accord Littlejohn*, 795 F.3d at 315-16.  "A plaintiff's burden at this prima facie stage is *de minimis*," *Treglia*, 313 F.3d at 719, but he must show that allegedly adverse employment action was material if he is to carry it, *id.* at 720.

"Actions that are 'trivial harms' — i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience' — are not materially adverse." *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (emphasis omitted) (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006)); *see also Burlington*, 548 U.S. at 67 (holding that Title VII does not protect individuals "from all retaliation, but [rather] from retaliation that produces an injury or harm"). Courts evaluate the materiality of adversity "objectively, based on the reactions of a reasonable employee." *Tepperwien*, 663 F.3d at 568.  And because "some actions may take on more or less significance depending on the context," courts evaluate "[a]lleged acts of retaliation ... both separately and in the aggregate, as even trivial acts may take on greater significance when they are

viewed as part of a larger course of conduct." *Id.* (quoting *Burlington*, 548 U.S. at 69).

### b.   Discussion

Plaintiff exhausted his claims of retaliation under the Rehabilitation Act by expressly addressing them in his underlying agency proceedings.  Moreover, "when an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing" for exhaustion purposes.  *Owens* v. *N.Y. City Hous. Auth.*, 934 F.2d 405, 410-11 (2d Cir. 1991); *see also Hendry* v. *Donahoe*, 931 F. Supp. 2d 441, 447 (E.D.N.Y. 2013) (noting same with respect to Rehabilitation Act claim).  The Court must therefore determine whether Plaintiff has pleaded plausibly a prima facie claim under the Rehabilitation Act.  At this stage in the litigation, it finds that he has.

Plaintiff's participation in the SSA's internal EEO process is plainly participation in a legally protected activity.  *See, e.g.*, *Treglia*, 313 F.3d at 720 ("[Plaintiff's] attempts to assert his rights against discrimination are protected activities[.]").  And Plaintiff has demonstrated that his employers knew of his engagement in this activity, because he exchanged email correspondence with them with regard to his EEO complaints.  (*See, e.g.*, SAC, Ex. 3, 22).  Even if he had not made this showing, the SSA has not disputed that it knew of Plaintiff's activity.  *See Treglia*, 313 F.3d at 720 (finding the second element of a prima facie case satisfied because a defendant did not "dispute that it knew of [Plaintiff's] activities").

Plaintiff has identified a number of putative adverse employment actions, including a transfer to a broken desk in an inconvenient part of the office, a failure to promote, a constructive demotion to an administrative position, and false negative performance reviews.  (*See, e.g.*, SAC, Ex. 2 ("I feel this is being done in retaliation after requesting reasonable accommodations."); *id.* at Ex. 5 (noting that receptionist is a lower grade position "and nobody has been promoted to grade 9 from being a contact rep," such that performance of that job "blocks opportunities for promotion or salary increase"); *id.* at Ex. 8 ("Being assigned to receptionist and my complaints about reasonable accommodations is an act of retaliation[.]"); *id.* at Ex. 23 (considering poor performance reviews as aggravating factor in decision to impose 3-day suspension)).  These actions, in the aggregate, rise to the level of material adversity required at the third step of a prima facie case.  *See Treglia*, 313 F.3d at 720 (citing *Morris* v. *Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand")) (holding that plaintiff's "claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions'"); *id.* ("Lesser actions such as negative employment evaluation letters may also be considered adverse.").[11]

---

[11]   The Court is skeptical that a three-day switch in desk location, implemented so that Plaintiff could be closer to his immediate supervisor, will ultimately be found to be retaliatory conduct.  (*See* SAC, Ex. 16).  However, given the other allegations of retaliation of which this may be a part, the Court finds it preferable to address the matter at the summary judgment context.

Finally, Plaintiff has alleged a sufficient causal connection between the protected activity and adverse actions.  Plaintiff has done so principally "by showing that [his] protected activity was closely followed in time by the adverse action." *Cifra* v. *G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation mark omitted) (quoting *Reed* v. *A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).  Plaintiff has alleged a timeline of requests and adverse actions that plausibly establishes a causal relationship: over the course of Plaintiff's employment, his persistent requests for accommodations were met with increasingly hostile responses and a series of actions plausibly evincing an intent to discourage further requests.

According to the SAC and its exhibits, Plaintiff first formally requested a reasonable accommodation on July 29, 2010; he was moved three days later to a broken desk that was farther from the printer, scanner, and mail room. (SAC, Ex. 2, 15).  Plaintiff filed a formal complaint with the EEOC on June 3, 2011; his electronic caseload privileges were rescinded that same month; and on June 22, 2011, he was assigned "all the physical heavy cases" (SAC, Ex. 16), despite management's knowledge that these were more difficult for him to work on.  (*See, e.g.*, SAC Add.; SAC, Ex.1; *id.* at Ex. 15).  Plaintiff's 2014 Case was resolved in the SSA's favor on June 11, 2015 (SAC, Ex. 1), and Plaintiff alleges that the conclusion of this case coincided with an increase in the receptionist duties he was asked to perform (*id.* at Ex. 8 ("Being assigned to receptionist and my complaints about reasonable accommodations is an act of retaliation due to the fact I have not done receptionist in the 5+ years of

31

working here and then get assigned when management thinks the lawsuit is over.")).  The tension regarding Plaintiff's performance of these duties culminated in Plaintiff's three-day suspension, which was proposed in November 2015 and implemented in February 2016, and which occurred after, among other things, Plaintiff refused to perform receptionist duties that he was directed to do and that he believed were outside the scope of his position.  (*Id.* at Ex. 21, 23).  This timeline supports, at this stage, Plaintiff's alleged causal connection between his protected activity and the Defendant's adverse actions.  Defendant's motion to dismiss Plaintiff's retaliation claim under the Rehabilitation Act is therefore denied.

### 3.    Plaintiff Fails to State a Claim for Hostile Work Environment

#### a.    Applicable Law

"In order to establish a claim for hostile work environment under the Rehabilitation Act, a plaintiff must plausibly allege '[i] a workplace that is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered and [ii] a specific basis for imputing the challenged conduct to the employer.'"  *Miller*, 2016 WL 698147, at *3 (quoting *Wesley-Dickson* v. *Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014) (summary order)), *appeal dismissed* (May 5, 2016).[12]  A plaintiff may make this showing either by demonstrating

---

[12]    The Second Circuit "has not yet decided whether a hostile work environment claim may be made under the ADA."  *Wesley-Dickson* v. *Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 n.2 (2d Cir. 2014) (summary order); *see also Preston* v. *Bristol Hosp.*, 645 F. App'x 17, 20 n.3 (2d Cir. 2016) (summary order) (same).  However, courts in this Circuit continue to evaluate hostile work environment claims brought under the Rehabilitation Act.  *See, e.g.*, *Kelly* v. *N.Y. State Office of Mental Health*, No. 13 Civ. 3383

that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Desardouin* v. *City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (internal quotation mark omitted) (quoting *Cruz* v. *Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).  The plaintiff must also "link the hostile conduct to [his] protected class." *Miller*, 2016 WL 698147, at *3 (quoting *Sosa* v. *N.Y. State Div. of Human Rights*, No. 11 Civ. 5155 (NGG) (VVP), 2015 WL 5191205, at *12 (E.D.N.Y. Sept. 4, 2015)).

In determining whether the threshold has been met, the court's inquiry should focus on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  The standard for establishing a hostile work environment is high.  *See Feingold* v. *New York*, 366 F.3d 138, 150 (2d Cir. 2004).

### b.   Discussion

Plaintiff's principal support for his hostile work environment claim is the retaliatory conduct discussed in the preceding section.  (*See* SAC).  Plaintiff also indicates that he at times felt unsafe because the office door beside his desk was unlocked (such that SSA claimants could enter his work area), or because boxes of printer ink and case files blocked his way or posed a "hazard"

---

(KAM) (SLT), 2016 WL 4203470, at *13 (E.D.N.Y. Aug. 9, 2016); *Miller* v. *McHugh*, No. 14 Civ. 5026 (CS), 2016 WL 698147, at *3 (S.D.N.Y. Feb. 19, 2016), *appeal dismissed* (May 5, 2016).

and "security risk."  (SAC, Ex. 3).  But such allegations do not rise to the high

standard required to show a hostile work environment.  Plaintiff has not

alleged facts indicating that a reasonable belief that he was unsafe, nor has he

demonstrated that the SSA's failure to dispose of boxes properly was anything

more than "the sorts of everyday, unremarkable exchanges and minor

altercations that are part and parcel of any workplace environment."  *See*

*Hodges* v. *Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 498 (S.D.N.Y. 2013).  Nor

could Plaintiff's alleged disagreements with his supervisor, email restrictions,

or denials of advance leave support a hostile work environment claim under the

Rehabilitation Act.  *See, e.g.*, *Monachino* v. *Bair*, 769 F. Supp. 2d 431, 442-43

(S.D.N.Y. 2011) (denying hostile work environment claim premised in part on

disputes regarding plaintiff's "leave, time and attendance"), *aff'd,* 481 F. App'x

20 (2d Cir. 2012) (summary order); *Lucenti* v. *Potter*, 432 F. Supp. 2d 347, 362

(S.D.N.Y. 2006) ("Allegations of even constant reprimands and work criticism

by themselves are not sufficient to establish a hostile environment claim.").

Plaintiff simply has not alleged that his was "a workplace ... so severely

permeated with discriminatory intimidation, ridicule, and insult that the terms

and conditions of [his] employment were thereby altered."  *Miller*, 2016 WL

698147, at *3.

    And even assuming any of this alleged "conduct rose to an actionable

level, [Plaintiff's] hostile work environment claim[] would fail because he has

not shown any 'linkage or correlation' between the conduct, on the one hand,

and a protected characteristic, on the other."  *See Monachino*, 769 F. Supp. 2d

at 443 (quoting *Alfano* v. *Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("It is ... important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.")). Plaintiff's hostile work environment claim must be dismissed.

Separately, Plaintiff brings a "constructive discharge claim," which "is regarded as an aggravated case of hostile work environment." *Ferraro* v. *Kellwood Co.*, No. 03 Civ. 8492 (SAS), 2004 WL 2646619, at *11 (S.D.N.Y. Nov. 18, 2004); *see also Pa. State Police* v. *Suders*, 542 U.S. 129, 147-48 (2004) (describing a constructive discharge claim as a "'worse case' harassment scenario, harassment ratcheted up to the breaking point"). "Here, because plaintiff has not stated a hostile work environment claim ... *a fortiori* [he] has not stated a claim for constructive discharge." *Kelly* v. *N.Y. State Office of Mental Health*, No. 13 Civ. 3383 (KAM) (SLT), 2016 WL 4203470, at *16 (E.D.N.Y. Aug. 9, 2016). The Court also notes that Plaintiff continues to work at the SSA. *See Shultz* v. *Congregation Shearith Israel of the City of N.Y.*, No. 15 Civ. 7473 (JPO), 2016 WL 4367974, at *6 (S.D.N.Y. Aug. 18, 2016) ("To succeed on a constructive discharge claim, an employee must show, first, that [his] employer created an intolerable environment that forced [him] to resign, and second, that a reasonable person in [his] circumstances would have found the work conditions so intolerable as to compel resignation.").

**D.    The Court Denies Plaintiff's Applications for Leave to Amend**

Plaintiff has twice amended his complaint, first to include allegations exhausted upon his receipt of the SSA's June 11, 2015 Right to Sue Letter (Dkt. #14), and second with the Court's leave pursuant to Rule 15(a)(2).  (Dkt. #34).  In connection with this motion, Plaintiff has sought to amend the operative pleading in two different ways:  First, in opposing the instant motion, Plaintiff requests leave to file a third amended complaint to bolster his retaliation claim, if the Court were inclined to dismiss that claim.  (*See* Pl. Opp. 8, 10).  Since the Court has sustained that claim, the application is moot.

Additionally, Plaintiff appears to be seeking leave to amend in order to include allegations made in the 2016 Case that may or may not be exhausted.  (*See* Dkt. #63, 64, 72).  For the reasons stated below, the Court reaffirms its November 9, 2016 denial of Plaintiff's application (*see* Dkt. #77), but does so without prejudice.

**1.    Applicable Law**

Rule 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'"  *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam) (quoting *New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

However, leave to amend may be denied if the amendment would be futile.  *See, e.g., Knife Rights, Inc.* v. *Vance*, 802 F.3d 377, 389 (2d Cir. 2015).

Amendment is futile if the "amended portion of the complaint would fail to state a cause of action." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that amended complaint must be "sufficient to withstand a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)").  Leave to amend may also be denied "when a party has been given ample prior opportunity to allege a claim," *De Jesus* v. *Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996), or "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant," *Cerni* v. *J.P. Morgan Sec. LLC*, No. 15 Civ. 5389 (AJN), 2016 WL 5805300, at *7 (S.D.N.Y. Sept. 20, 2016) (internal quotation mark omitted) (quoting *Kenney* v. *Clay*, 172 F. Supp. 3d 628, 643 (N.D.N.Y. 2016)).

### 2.    Discussion

In its Order of November 9, 2016, the Court directed Plaintiff to renew his application for leave to amend after the instant motion was resolved.  (Dkt. #77).  The Court reaffirms that directive here, because it cannot, on the record before it, determine whether the motion would succeed.  Among other things, Plaintiff has not specified which new claims he proposes to bring — that is, whether they include all his claims in the 2016 Case or some subset — and the Court cannot determine their timeliness.  Moreover, Defendant has had no opportunity to oppose an amendment.  Therefore, the Court continues its prior denial of Plaintiff's motion to supplement or amend the SAC, but does so

37

without prejudice and with leave to file a motion to amend that would include a copy of the proposed pleading.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED with regard to all of Plaintiff's claims under Title VII. Defendant's motion is DENIED with regard to Plaintiff's retaliation claim under the Rehabilitation Act, but GRANTED with regard to Plaintiff's other Rehabilitation Act claims. If Plaintiff wishes to pursue a motion for leave to amend his complaint to include claims raised in the 2016 Case, such motion is due on or before March 8, 2017. Defendant's response to Plaintiff's motion is due April 7, 2017. Plaintiff's reply, if any, is due April 28, 2017.

SO ORDERED.

Dated:   February 6, 2017
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to*:

Danny Lee
P.O. Box 500786,
San Diego, California
92150-0786