```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
DANNY LEE,                                            :
                                                      :
                          Plaintiff,                  :
                                                      :
              v.                                      :   15 Civ. 1472 (KPF)
                                                      :
NANCY A. BERRYHILL,                                   :   OPINION AND ORDER
Acting Commissioner, Social Security                  :
Administration,                                       :
                                                      :
                          Defendant.                  :
                                                      :
------------------------------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

Plaintiff Danny Lee ("Plaintiff") contends that in June 2011, his employer, Defendant Nancy Berryhill ("Defendant"), the Acting Commissioner of the Social Security Administration (the "SSA"), retaliated against him in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 701-718. In his initial, and voluminous, pleadings, Plaintiff alleged retaliation and discrimination based on race, sex, national origin, color, religion, and disability. After motion practice and clarification from Plaintiff's counsel, only a claim of retaliation remains. With discovery now concluded, Defendant has moved for summary judgment as to this claim. For the reasons set forth below, Defendant's motion is granted.

# BACKGROUND[1]

## A. Factual Background

On September 8, 2009, the SSA hired Plaintiff to work as a Case Intake Technician in its Brooklyn Office of Disability Adjudication and Review. (Def. 56.1 ¶ 2). Plaintiff was appointed pursuant to the agency's selective placement program, which strives to match qualified individuals who have disabilities with employment opportunities that are consistent with their skills and abilities. *See generally Careers at SSA: Individuals with Disabilities*, https://www.ssa.gov/careers/IndividualsWithDisabilities.html (last visited Jan. 29, 2019). Plaintiff suffers from vascular necrosis of the hip, a condition resulting from poor circulation. (Def. 56.1 ¶ 1; Pl. Dep. 15:19-16:2, 66:9-10,

---

[1] This Opinion draws its facts from Defendant's submission of undisputed facts pursuant to Local Rule 56.1 (*see* Dkt. #122 ("Def. 56.1")), and certain exhibits submitted by Defendant in support of her motion. These exhibits include Plaintiff's Deposition Transcript (Pengelly Decl., Ex. A (Dkt. #120-1 ("Pl. Dep."))), Plaintiff's June 3, 2011 EEO Complaint (King Decl., Ex. B (Dkt. #121-1 ("June 2011 EEO Compl."))), a July 16, 2011 letter from the SSA Office of Civil Rights and Equal Opportunity (King Decl., Ex. C (Dkt. #121-2 ("OCREO Letter"))), an affidavit from Plaintiff (King Decl., Ex. E (Dkt. #121-4 ("Pl. Aff."))), an addendum to Plaintiff's original affidavit (King Decl., Ex. F (Dkt. #121-5 ("Pl. Add. Aff."))), an affidavit from Lonnie Phillips (King Decl., Ex. G (Dkt. #121-6 ("Phillips Aff."))), an affidavit from Charles Bell (King Decl., Ex. H (Dkt. #121-7 ("Bell Aff."))), a memorandum from Mayra Cordero (King Decl., Ex. P (Dkt. #121-15 ("Cordero Memo"))). Plaintiff has submitted no exhibits in his opposition papers, but relies on certain of Defendant's exhibits to support his arguments.

Citations to Defendant's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in Defendant's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by Plaintiff, the Court finds such fact to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

69:10-16). The lack of blood flow leads to arthritis and can make movement difficult. (Pl. Dep. 15:19-16:2).

As a Case Intake Technician at the SSA, Plaintiff's responsibilities included screening incoming cases and entering their information into the computer system. (Def. 56.1 ¶ 3). For any information already in the system, Plaintiff simply verified that it was correct. (Pl. Dep. 109:6-11). Plaintiff would also run queries and "compare [the data] to various programs and software." (*Id.* at 108:5-12).

Plaintiff and his co-worker, Kim Myers, were the only two Case Intake Technicians in the Brooklyn office, and together they processed all incoming cases. (Phillips Aff. 6). Ninety percent of the cases were received electronically, and the remaining ten percent were submitted on paper. (Def. 56.1 ¶ 4). Shortly after he was hired, Plaintiff informally requested that he be assigned exclusively to electronic cases. (*Id.* at ¶¶ 5-6). Because of his hip, Plaintiff found it painful to lift the heavy paper files. (Pl. Dep. 15:19-16:17). As a result of his request, Plaintiff was assigned solely to electronic cases, while Myers processed all the paper cases. (Def. 56.1 ¶ 6). Later, following a change in management, Myers was assigned half of the electronic cases, while continuing to process all paper cases. (*Id.* at ¶¶ 7-9).

During this time, Plaintiff began to lodge complaints of discrimination against the SSA. In the fall of 2010, Plaintiff filed his first formal EEO complaint, which he later withdrew. (Def. 56.1 ¶ 19). On June 3, 2011, Plaintiff filed his second formal EEO complaint. (*Id.* at ¶ 22). In it, Plaintiff

3

alleged discrimination on the basis of sex (male), race (Asian), and disability (physical). (OCREO Letter 1). He also complained that his supervisor, Lonnie Phillips, had given him a poor progress review in retaliation for his testimony in the EEO proceeding of another employee. (*Id.*).

Later that month, on June 22, 2011, Plaintiff was assigned to process paper cases. (Def. 56.1 ¶ 27). Prior to that date, and despite his request for a wholly electronic workload, Plaintiff had been working on "a couple [of paper cases] every day" because he "wanted to learn how [they] were done." (Pl. Dep. 98:16-99:4). However, in June 2011, the Brooklyn office's service area expanded. (Def. 56.1 ¶ 25). Suddenly, the office was getting more cases to process, with no adjustment in goals or resources. (Phillips Aff. 6). Because Myers and Plaintiff were the only Case Intake Technicians (*id.*), the new cases began to accumulate into a backlog (Def. 56.1 ¶ 26).

To deal with the influx in cases, Phillips asked Plaintiff to process a percentage of the accumulating paper cases. (Def. 56.1 ¶¶ 27-28). Plaintiff claims that he was assigned all of those cases (Pl. Dep. 51:9-14), while Defendant alleges that the paper cases were split evenly between Plaintiff and Myers (Phillips Aff. 6). At the time, Myers — who had previously been responsible for all the paper cases and half of the electronic cases — was occupied training a new Case Intake Technician. (Pl. Dep. 78:17-19).

In response to the new assignment, Plaintiff told Phillips that he "couldn't handle paper cases at all." (Phillips Aff. 13). In point of fact, Plaintiff's medical file stated that "he was limited in doing frequent heavy

4

lifting." (*Id.*). The heaviest case weighed 8.5 pounds. (*Id.*). Because Plaintiff's medical file did not indicate that he was altogether unable to process paper cases, Phillips "told him the work needed to get done" and "asked him what [Phillips] could do to help." (*Id.*). In that regard, Phillips ended up assigning two employees, Michael Andrews and Charles Bell, to help Plaintiff. (Def. 56.1 ¶¶ 30-31). Andrews delivered the cases to Plaintiff's desk, and Bell removed the cases once Plaintiff finished processing them four business days later. (*Id.*). After Plaintiff finishing processing the paper cases, he returned to his prior processing workload, which comprised almost exclusively electronic cases. (*Id.* at ¶ 35).

**B.     Procedural History**

On February 25, 2015, Plaintiff initiated this action. (Dkt. #1). He was given several opportunities to amend his pleadings, and took advantage of each opportunity. (*See* Dkt. #14, 34). On May 18, 2016, Defendant filed a motion to dismiss what was then the operative pleading, the Second Amended Complaint. (Dkt. #48-49). The Court granted Defendant's motion in part, dismissing all claims other than Plaintiff's retaliation claim under the Rehabilitation Act. (Dkt. #79). *Lee* v. *Colvin*, No. 15 Civ. 1472 (KPF), 2017 WL 486944 (S.D.N.Y. Feb. 6, 2017).

On July 31, 2017, Plaintiff filed the Third Amended Complaint (or "TAC"). (Dkt. #94). Shortly thereafter, Defendant sought a pre-motion conference concerning a motion to dismiss portions of the TAC as unexhausted. (Dkt. #97). In response, and through recently-retained counsel, Plaintiff withdrew

5

any claims asserted in paragraphs five, six, and eight of the TAC. (Dkt. #100). Only one claim remained: the Rehabilitation Act retaliation claim outlined in paragraph seven. (*Id.*).

On June 1, 2018, at the close of discovery, Defendant moved for summary judgment as to the retaliation claim. (Dkt. #118-24). Plaintiff filed his opposition papers on July 16, 2018 (Dkt. #125-27), and the briefing was complete with the filing of Defendant's reply papers on July 27, 2018 (Dkt. #129).

## DISCUSSION

### A. Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[2] A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation

---

[2] The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts."  *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory

7

statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,* 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

**B.   No Genuine Dispute of Fact Exists as to Whether the June 2011 Paper Case Assignment Was in Retaliation for Plaintiff's Prior Protected Activity**

In his sole remaining claim, Plaintiff argues that his supervisor, Lonnie Phillips, assigned him the backlogged paper cases on June 22, 2011, in retaliation for his June 3, 2011 EEO complaint. Defendant asks the Court to grant summary judgment in its favor on two separate bases: (i) Plaintiff has not established a *prima facie* case of retaliation; and (ii) Defendant's legitimate, nonretaliatory reason for the case assignment was not pretextual.

Claims for retaliation under the Rehabilitation Act are "analyzed under the same burden-shifting framework established for Title VII cases." *Treglia* v. *Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To defeat Defendant's motion for summary judgment, Plaintiff must establish a *prima facie* case of retaliation by presenting evidence sufficient to permit a rational trier of fact to find that "[i] [Defendant] discriminated — or took an adverse employment action — against him, [ii] because he has opposed any unlawful employment practice." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted). Plaintiff must also adequately plead "but for" causation, which can either "be shown by direct evidence of retaliatory

8

animus or inferred through temporal proximity to the protected activity." *Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

If a plaintiff meets his *prima facie* burden, the employer must then articulate a legitimate reason for the adverse employment action. *Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). If the employer does so, "the presumption of retaliation … drops from the picture" and the plaintiff "must then come forward with [evidence that the] non-retaliatory reason is a mere pretext for retaliation." *Id.* at 845.

### 1. No Reasonable Jury Could Find that the June 2011 Paper Case Assignment Was an Adverse Employment Action

Defendant argues that Plaintiff fails to establish a *prima facie* retaliation claim because the June 2011 paper case assignment did not qualify as an adverse employment action. (Def. Br. 14). The Court agrees.

In cases involving allegations of retaliation, the resulting injury or harm must rise to a certain "level of seriousness" before the retaliation becomes actionable. *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 67 (2006) ("*Burlington Northern*"). In *Burlington Northern*, the Supreme Court clarified that an employee must establish that an employer's actions were "materially adverse," which it defined as follows:

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Rochon* v. *Gonzalez*, 438 F.3d 1211, 1219 (C.A.D.C. 2006) (quoting *Washington* v. *Illinois Dept. of Revenue*, 420 F.3d 658, 662 (C.A.7 2005)).

9

548 U.S. at 68.

Notably, when establishing the objective materiality standard, the Supreme Court sought to "separate significant from trivial harms." *Burlington Northern*, 548 U.S. at 68. "[P]etty slights or minor annoyances that often take place at work and that all employees experience" are not materially adverse. *Id.* The Rehabilitation Act does not set forth "a general civility code for the American workplace." *Id.*

On this record, the Court easily concludes that, as a matter of law, the June 22, 2011 paper case assignment does not rise to the level of a materially adverse employment action. Plaintiff's supervisor assigned him, on one occasion, a discrete number of paper cases to process. That assignment — and the processing of paper cases more generally — was an essential function of Plaintiff's job. (Def. 56.1 ¶ 40). Not only are "assignments within an employee's job description … generally not materially adverse," *Forest* v. *New York State Office of Mental Health*, 672 F. App'x 42, 45 n.3 (2d Cir. 2016) (summary order), but Plaintiff had also regularly processed paper cases prior to the June 2011 assignment (Def. 56.1 ¶ 10).

Even when assigning Plaintiff a task that simply "require[d] Plaintiff to perform [his] job duties," *Lynch* v. *Brennan*, No. 15 Civ. 2479 (CS), 2017 WL 3309747, at *7 (S.D.N.Y. Aug. 2, 2017), Phillips offered Plaintiff assistance (Def 56.1 ¶¶ 30-31). He assigned two employees to help Plaintiff: Michael Andrews delivered the cases to Plaintiff's desk, and Charles Bell took them away when Plaintiff finished processing them. (*Id.*). Plaintiff did not have to lift or carry

10

any of the cases.  Instead, he entered and verified the data, much as he would have done with any electronic case.  Plaintiff finished processing the paper cases in less than one week, at which point he resumed working mostly on electronic cases.  (*Id.* at ¶¶ 32, 35).

No reasonable factfinder could find that a one-week, backlog-reducing paper case assignment within Plaintiff's job description was more than "a mere inconvenience or an alteration of job responsibilities," as required to instantiate an adverse employment action.  *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal citations omitted).  Although the relevant inquiry under *Burlington Northern* is whether "a reasonable employee would have found the challenged action materially adverse," *see* 548 U.S. at 68, Plaintiff himself alleges that he was only harmed in one instance:  After Charles Bell removed the paper cases from Plaintiff's desk, the files sat on the filing cart for several weeks before being filed in the cabinets.  (Def. 56.1 ¶ 33).  Plaintiff stated, without further explanation, that this caused him "emotional duress."  (*Id.* at ¶ 34).  Particularly considering that Phillips provided Plaintiff with the assistance of two employees, ensuring that he would not have to lift any cases, the assignment is well within the bounds of "minor annoyances" that are insufficient as a matter of law to be materially adverse.  *Hicks*, 593 F.3d at 165.

The Court recognizes, as Plaintiff argues, that context matters.  *See Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (S]ome actions may take on more or less significance depending on the context ... and [a]lleged acts of retaliation must be evaluated both separately

and in the aggregate."). Here, however, because of the brevity of the putative incident of retaliation, the Court believes that little could be gained from considering Plaintiff's employment in the aggregate. But even considering the 2011 paper case assignment within the context of Plaintiff's workplace more broadly, nothing indicates that the assignment affected Plaintiff in a materially adverse way. To the contrary, the context cuts against Plaintiff's argument.

From the time of his hiring, Plaintiff regularly lodged complaints. At each step, after Plaintiff provided the appropriate medical documentation, his employer granted him accommodations in the workplace. (Def. 56.1 ¶¶ 15, 38-40). Contrary to his assertions, Plaintiff's employment history does not indicate that his employer was likely to retaliate against him. Instead, it indicates that Plaintiff's employer willingly engaged with him in the interactive complaint process and provided assistance whenever necessary and appropriate.

In short, no reasonable jury could find that the one-week assignment within Plaintiff's core job functions affected him in a materially adverse way. Because Plaintiff has failed to establish an element of his *prima facie* case, the Court grants summary judgment in favor of Defendant.[3]

---

[3] Defendant argues, as a second basis for summary judgment, that Plaintiff has failed to establish another element of a *prima facie* retaliation case: but-for causation. (Def. Br. 19-22). Plaintiff relies solely on temporal proximity for his assertion that the paper case assignment was retaliatory. (Pl. Opp. 6). The Court finds merit in Defendant's argument that a different standard might be appropriate for a frequent filer of discrimination complaints, who would otherwise be able to claim temporal proximity over a broader swath of conduct, and thereby potentially diminish the significance of such proximity. However, the Court declines to find as a matter of law that Plaintiff did not establish temporal proximity between his formal complaint on June 3, 2011, and the paper case assignment on June 22, 2011.

### 2. No Reasonable Jury Could Find That Defendant's Explanation for the Paper Case Assignment Was Pretextual

Even if, counterfactually, Plaintiff had established his *prima facie* case, summary judgment would still be warranted. As an alternative argument, Defendant claims that Plaintiff cannot establish that her non-retaliatory explanation for the June 2011 paper case assignment was pretextual. (Def. Br. 22-25). As to this independent basis for summary judgment, the Court also agrees.

To review, after a plaintiff meets his initial burden of establishing a *prima facie* case of discrimination, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). Here, Defendant meets that burden. As Plaintiff acknowledges, the Brooklyn office's service area increased in size in 2011, leading to an influx in cases. (Def. 56.1 ¶¶ 25-26). With only two Case Intake Technicians then responsible for processing all incoming cases, that increase quickly resulted in a backlog. (*Id.*). To reduce the backlog, Phillips asked Plaintiff to begin processing the paper cases. (*Id.* at ¶¶ 27-28).

Because Defendant has articulated an adequate non-retaliatory reason, the burden shifts back to Plaintiff to "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 721. At this stage, Plaintiff makes one argument: Defendant's disparate treatment of Myers and Plaintiff is evidence that Phillips's explanation is pretextual. (Pl.

Opp. 6). Plaintiff alleges Phillips assigned him all the paper cases in June 2011 and did not assign to Myers — who is not disabled — any of the new paper cases. (*Id.*).[4]

For several reasons, the Court finds that the fact that Myers was not assigned paper cases at the same time as Plaintiff is not evidence from which a reasonable jury could find pretext. *First*, at the time of the case influx, Myers had already taken on increased responsibility in other areas. (Pl. Dep. 78:14-22). As Plaintiff acknowledges, Myers was busy training a new Case Intake Technician. (*Id.*). *Second*, the record indicates that the assignment of the paper cases to Plaintiff was a standard redistribution of work among Plaintiff and Myers. Just prior to June 2011, Myers had been processing a larger share of the cases than Plaintiff — approximately half of the electronic cases and all of the paper cases. (Def. 56.1 ¶¶ 7-9). After the service area expansion, the Brooklyn office was still required to meet the same productivity goals, and management redistributed work accordingly. (Phillips Aff. 6).

This equilibrating of case assignments would not have been particularly disruptive to either Case Intake Technician. Because paper cases accounted for only ten percent of the total incoming cases (Def. 56.1 ¶ 4), even assigning all of those cases to one employee would not have led to a significant discrepancy in workloads. What is more, even assuming Plaintiff had been

---

[4] Whether or not Plaintiff received all of the backlogged paper cases is disputed by the parties. Phillips asserts that the cases were split equally between Plaintiff and Myers. (Phillips Aff. 6, 8). Plaintiff claims that all the paper cases were assigned to him. (Pl. Dep. 121:25-122:5). Drawing all inferences in favor of Plaintiff, the Court assumes, for the purposes of this Opinion, that Phillips assigned Plaintiff all of the paper cases on June 22, 2011.

14

assigned all the paper cases, and half of the electronic cases, for a period longer than one week, he would have only been responsible for 55 percent of the total case workload.

The June 2011 paper case assignment was a minor, temporary adjustment to account for an influx of new cases, as well as co-worker Myers's prior acceptance of a greater share of paper case assignments and then-current training responsibilities; in no way could it be viewed as a retaliatory action on the part of Defendant. Accordingly, the Court finds, as a second, independent basis for granting summary judgment that no genuine dispute remains as to whether Defendant's proffered neutral reason is pretextual.

## CONCLUSION

For the reasons above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close the case.

SO ORDERED.

Dated: January 30, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge